UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN A. JONES, JR.,

                              Plaintiff,

                  -against-

WESTCHESTER COUNTY, et al.,

                              Defendants.

**MEMORANDUM
OPINION AND ORDER**

20-CV-08542 (PMH)

PHILIP M. HALPERN, United States District Judge:

Steven Jones ("Plaintiff"), currently incarcerated at Westchester County Jail ("WCJ"), proceeding *pro se* and *in forma pauperis*, asserts claims against Westchester County (the "County"), the County Department of Correction's Commissioner Joseph K. Spano ("Spano"), County Executive George Latimer ("Latimer," and together with the County and Spano, the "County Defendants"), the jail medical provider Well Path ("Wellpath")[1] and Wellpath physician Herbert Stoddard ("Stoddard," and together with the County Defendants, "Defendants")[2] under 42 U.S.C. § 1983 for violations of the Eighth Amendment. Specifically, Plaintiff alleges that he contracted COVID-19 at WCJ because the staff failed to provide proper care and adequate protection to prevent the spread of the virus. (Doc 37. "Am. Compl.").[3]

---

[1] Because Defendants indicate in their filings that the entity is properly identified as "Wellpath," the Court adopts that spelling for purposes of this decision.

[2] There is no indication that Stoddard was served with process. Indeed, Wellpath advised the Court that Stoddard "passed away and has been deceased for some time." (Doc. 39). Nevertheless, the Court considers the viability of federal claims for relief against him *sua sponte* by operation of 28 U.S.C. § 1915(e)(2)(B). *See Williams v. Novoa*, No. 19-CV-11545, 2022 WL 161479, at *10-12 (S.D.N.Y. Jan. 18, 2022).

[3] Citations to the Amended Complaint correspond to the pagination generated by ECF.

On or about January 7, 2022, Wellpath and the County Defendants each filed a motion to dismiss, supported by a joint memorandum of law and an attorney declaration with exhibits. (Doc. 48; Doc. 50; Doc. 51; Doc. 52).[4] Plaintiff did not file any opposition to the motion.[5]

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

Plaintiff alleges that while incarcerated at WCJ, he was exposed to, and contracted, COVID-19, because correctional staff did not follow policies and procedures implemented to contain the virus. (Am. Compl. at 3). Plaintiff alleges that staff and medical personnel were provided with proper personal protective equipment ("PPE") beginning in March 2020, while inmates had no protection from the virus until approximately April 1, 2020. (*Id.*). Beginning on April 1, 2020, Plaintiff was provided one mask that had to be kept in a ziploc bag to keep it from getting wet because it would take up to two weeks before a new mask was provided. (*Id.*). Because Defendants failed to provide proper supplies on a timely basis, according to Plaintiff, inmates reused contaminated supplies and the virus spread at WCJ. (*Id.* at 4). Plaintiff tested positive for the virus on April 14, 2020 and suffered severe symptoms. (*Id.* at 6, 16, 28).

---

[4] The County Defendants first filed their motion to dismiss on January 7, 2022, but the Clerk of Court noted on the docket a filing error, terminated that motion, and directed counsel to re-file the motion papers. Counsel re-filed the motion papers on January 24, 2022, and the Court references those documents for purposes of this decision.

[5] Plaintiff's opposition was due on February 7, 2022. (Doc. 46). The docket indicates that a copy of the Court's Order setting the briefing schedule was mailed to Plaintiff on November 29, 2021. (*Id.*; Nov. 29, 2021 Entry). On January 7, 2022, Defendants filed certificates of service indicating service of their motion papers on Plaintiff. (Docs. 47-3, 49). Plaintiff did not file opposition papers. On February 18, 2022, the Court *sua sponte* extended Plaintiff's time to oppose the motions to March 18, 2022, warned Plaintiff that no further extensions would be granted, and cautioned that if Plaintiff failed to file opposition by March 18, 2022, the motion would be deemed fully submitted and unopposed. (Doc. 53). The Court's February 18, 2022 Order was mailed to Plaintiff. (*See* Feb. 18, 2022 Entry). Thus, as is clear from the docket, Plaintiff was sent Defendants' motion papers as well as two additional documents notifying him that Defendants had moved to dismiss the Amended Complaint. Plaintiff has not, as of the date of this decision, filed any opposition papers. Accordingly, the motions are deemed fully submitted and ripe for adjudication.

Thereafter, on February 5, 2021, Plaintiff was quarantined with both infected and non-infected inmates, thereby allegedly exposing the population to COVID-19. (*Id.* at 6).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than [a] formal pleading[] drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Moreover, when deciding an unopposed motion to dismiss (as is the case here with respect to Defendants' motion), "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is to be given a reasonable

4

opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-05286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). It is, therefore, appropriate for the Court to test the sufficiency of the Amended Complaint even without the benefit of formal opposition to the motion.

## ANALYSIS

I.     Rule 12(b)(6): Failure to State a Claim Under § 1983

Plaintiff's Eighth Amendment claim is brought under 42 U.S.C. § 1983. That section provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language . . . creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)).

The Eighth Amendment instructs that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," U.S. Const. amend. VIII, and the Supreme Court has explained that the Eighth Amendment requires that prison officials "provide humane conditions of confinement," which include making sure "that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Accordingly, prison officials must, *inter alia*, "take reasonable measures to guarantee the safety of inmates in their custody." *Rennalls v. Alfredo*, No. 12-CV-05300, 2015 WL 5730332, at

*3 (S.D.N.Y. Sept. 30, 2015) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620

(2d Cir. 1996)); *see also Rembert v. Cheverko*, No. 12-CV-09196, 2014 WL 3384629, at *5

(S.D.N.Y. July 10, 2014) (quoting *Farmer*, 511 U.S. at 832-33); *Randle v. Alexander*, 960 F.

Supp. 2d 457, 471 (S.D.N.Y. 2013).

For Plaintiff to state a claim against Defendants for failing to protect him from COVID-

19, he must plead facts supporting two separate prongs to show that they acted with "deliberate

indifference." *Edwards v. Black*, No. 20-1677, 2021 WL 1748478, at *1 (2d Cir. May 4, 2021).

The first prong, the "objective prong," requires facts establishing that Plaintiff was "incarcerated

under conditions posing a substantial risk of serious harm." *Morgan v. Dzurenda*, 956 F.3d 84,

89 (2d Cir. 2020) (internal quotation marks omitted). The second prong, the "subjective prong,"

requires acting "with a sufficiently culpable state of mind." *Morgan*, 956 F.3d at 89 (internal

quotation marks omitted). "[A] prison official has sufficient culpable intent if he has knowledge

that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to

take reasonable measures to abate the harm." *Rennalls*, 2015 WL 5730332, at *3 (internal

quotation marks omitted).

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious

disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Courts have found that inmates may

face a substantial risk of serious harm absent adequate measures to counter the spread of

COVID-19, as "[i]t is undisputed—and, indeed, by now common knowledge—that COVID-19 is

a highly dangerous disease that poses a significant risk of severe illness and death." *Houston v.

Capra*, No. 20-CV-02135, 2022 WL 748260, at *8 (S.D.N.Y. Mar. 11, 2022); *see also Petitpas

v. Griffin*, No. 20-CV-00769, 2020 WL 6826723, at *6 (D. Conn. Nov. 21, 2020); *Chunn v.

Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020) (citing cases).

Plaintiff has not alleged that his exposure to COVID-19 resulted from Defendants' "deliberate indifference." *Edwards*, 2021 WL 1748478, at \*1. The allegations set forth in the Amended Complaint do not plausibly suggest that Plaintiff was confined in an environment that posed a substantial risk of transmission of COVID-19, or that Defendants ignored that risk. To the contrary, Plaintiff alleges that WCJ implemented measures such as social distancing, required hand-cleaning, the use of hand sanitizer, and cleaning surfaces frequently, recommended avoiding "high touch surfaces" and touching the face, nose, and eyes, and the use of tissues or sleeves to cover hands, and that he was provided with a mask. (Am. Compl. at 3, 5, 17-26). Likewise, the protocol with which Plaintiff takes issue that required inmates tested for and/or suspected of contracting COVID-19 to quarantine until receiving their test results was a measure taken to mitigate the risk of spreading COVID-19 throughout the jail in an effort to protect the health and safety of the inmates and staff. The allegations in the Amended Complaint do not plausibly suggest that Plaintiff was at substantial risk of serious harm when evaluated in light of the steps taken to mitigate the danger at WCJ. *Morgan v. Parmiter*, No. 22-CV-00147, 2022 WL 913188, at \*3-4 (N.D.N.Y. Mar. 29, 2022); *Chunn*, 465 F. Supp. 3d at 200 ("[W]hether a particular danger poses a substantial risk of serious harm in a prison must be evaluated in light of the steps that the facility has already taken to mitigate the danger.").

Even if Plaintiff were able to satisfy the objective prong, he fails to satisfy the subjective prong. Plaintiff has not adequately alleged that any of the Defendants intentionally or recklessly failed to act with reasonable care to mitigate the risk that the alleged conditions posed to Plaintiff. Plaintiff suggests that countermeasures taken at WCJ were not followed correctly, as inmates were not given proper "PPE, hand sanitizer, training in proper cleansing of infected areas as well as proper supplies such as rags . . . . Supplies were only given once a week."

7

(Compl. at 3-4). Even assuming Defendants' response to COVID-19 was imperfect, or negligent, it is not enough to support a finding of deliberate indifference. *Parmiter*, 2022 WL 913188, at \*4 (citing *Pike v. Cerliano*, No. 20-CV-0619, 2021 WL 3704377, at \*3 (E.D. Tex. Aug. 3, 2021), *adopted by* 2021 WL 3700252 (E.D. Tex. Aug. 19, 2021)).

Moreover, Plaintiff has not implicated Defendants personally in any purported constitutional violation. As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

While Plaintiff claims that the policies that were implemented to combat the COVID-19 pandemic were inadequate, he fails to allege the roles Spano and Latimer had beyond the fact that they are the Commissioner of the County's Department of Correction and County Executive, respectively. Defendants' supervisory positions are insufficient, without more, to show that they were or should have been aware of the conditions of which Plaintiff complains. *Gil-Cabrera v. Dep't of Corr.*, No. 20-CV-09493, 2021 WL 5282620, at \*4 (S.D.N.Y. Sept. 27, 2021) (dismissing § 1983 claims against prison supervisors alleging deliberate indifference to serious risk of contracting COVID-19 when complaint lacked facts explaining how those officials were

personally involved in alleged violations), *adopted by* 2021 WL 5910055 (S.D.N.Y. Dec. 14, 2021); *Gibson v. State of New York*, No. 21-CV-04251, 2021 WL 4267683 (S.D.N.Y. Sept. 20, 2021) (same); *Rose v. City of New York Dep't of Corr.*, No. 21-CV-03164, 2021 WL 3271830, at *2 (S.D.N.Y. July 30, 2021) (same); *see also Maldonado v. Mandalaywala*, No. 17-CV-01303, 2018 WL 2411806, at *5 (N.D.N.Y. May 29, 2018) (dismissing claim alleged against defendant solely because of his position as superintendent of correctional facility).

As to the County and Wellpath, where a plaintiff sues a municipality (or by extension, a private business such as Wellpath) under § 1983, "it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights." *Singleton v. Dep't of Corr.*, No. 21-CV-02919, 2021 WL 2665738, at *4 (S.D.N.Y. June 28, 2021); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978)); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) ("Private employers are not liable under § 1983 for the constitutional torts of their employees . . . unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'") (quoting *Monell*, 436 U.S. at 692 (emphasis in original)).

A plaintiff must allege facts showing: "(1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights." *Singleton*, 2021 WL 2665738, at *4. The Amended Complaint fails to plead any policy concerning the alleged deliberate indifference or any widespread practice

resulting in deliberate indifference. Rather, Plaintiff's claim is the "antithesis of a *Monell* claim." *Berkley v. City of New Rochelle*, No. 21-CV-00578, 2022 WL 784018, at \*8 (S.D.N.Y. Mar. 15, 2022) (quoting *Thomas v. DuBois*, No. 19-CV-07533, 2020 WL 2092426, at \*4 (S.D.N.Y. Apr. 30, 2020). "In other words, any violation of Plaintiff's constitutional rights was caused by the *failure* to follow a policy, not the policy itself. By definition, such allegations fail to state a claim under *Monell*." *Id*. (quoting *Thomas*, 2020 WL 2092426, at \*4 (emphasis in original)).

Simply put, the Amended Complaint fails to sufficiently allege a constitutional violation and, accordingly, Plaintiff's Eighth Amendment claim is dismissed.

II.    Defendant Stoddard and State Law Claims

Plaintiff's sole allegation against Stoddard is that Stoddard violated Plaintiff's privacy rights when he shouted Plaintiff's COVID-19 test results to Plaintiff through a closed cell door. (Am. Compl. at 5). "To the extent this claim arises under federal law, [Plaintiff] presumably is proceeding under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320, *et seq*., which requires health care providers to keep patient medical records confidential. Courts overwhelmingly have concluded, however, that a patient cannot bring a private right of action under HIPAA." *Hill v. New York Post*, No. 08-CV-05777, 2010 WL 2999795, at \*3 (S.D.N.Y. May 28, 2010), *adopted by* 2010 WL 2985906 (S.D.N.Y. July 29, 2010); *see also Myers v. Dolac*, No. 09-CV-06642, 2013 WL 5175588, at \*9 (W.D.N.Y. Sept. 12, 2013) ("Although HIPAA generally provides for the confidentiality of medical records, . . . an individual cannot sue for its enforcement or for damages caused by disclosures." (internal quotation marks and citations omitted)); W*arren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) ("HIPAA does not provide for either an express or implied private right of action."). Accordingly, the purported HIPAA claim against

Stoddard is dismissed.[6] To the extent Plaintiff's Eighth Amendment claim is pressed against

Stoddard, it is likewise dismissed for the same reasons set forth above.

As the Court has dismissed Plaintiff's federal claims for relief against Defendants and

Stoddard, it declines to exercise jurisdiction over Plaintiff's state law claims to the extent

Plaintiff intends to bring any such claims. *See, e.g., McLeod v. Jewish Guild for the Blind*, 864

F.3d 154, 158 n.6 (2d Cir. 2017) ("Of course, a district court may decline to exercise

supplemental jurisdiction over state and local law claims if it has dismissed all claims over which

it has original jurisdiction.").[7]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's

claims against them are DISMISSED. Defendant Stoddard is DISMISSED under 28 U.S.C. §

1915(e)(2)(B)(ii). The Court declines to exercise supplemental jurisdiction over Plaintiff's state

law claims to the extent any such claims are asserted.

---

[6] While Plaintiff does not invoke the Fourteenth Amendment, the Court notes that the right to privacy embodied in the Due Process Clause encompasses the "right to protection regarding information about the state of one's health." *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994). To the extent Plaintiff intended to bring a claim against Stoddard, or Defendants, under the Fourteenth Amendment in connection with the disclosure of his positive COVID-19 test result, the claim must be dismissed. "Although inmates have a constitutional right to confidentiality in their health status, such right is not absolute." *Dash v. Mayers*, No. 19-CV-00414, 2020 WL 1946303, at *4 (S.D.N.Y. Apr. 23, 2020), *adopted sub nom. Dash v. Doe*, 2020 WL 3057133 (S.D.N.Y. June 9, 2020). "First, 'the interest in the privacy of medical information will vary with the condition.'" *Id*. (quoting *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999). Second, even "where an inmate holds a privacy right in maintaining the confidentiality of his medical information, prison officials can impinge on that right only to the extent that their actions are 'reasonably related to legitimate penological interests.'" *Id*. (quoting *Powell*, 175 F.3d at 112. COVID-19 is not the type of condition to which courts have traditionally extended this right of privacy. *See, e.g.*, *id*. at *5 (collecting cases). In any event, "disclosure of potential COVID-19 exposure serves a legitimate penological interest in protecting the health and safety of prison staff and inmates alike." *Archie v. Warren*, No. 20-CV-07649, 2022 WL 92804, at *2 (D.N.J. Jan. 10, 2022).

[7] Because the Court declines to exercise jurisdiction over Plaintiff's state law claims, the Court need not and does not reach Defendants' substantive arguments for dismissal of those claims.

Although "courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its shortcomings, . . . leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies." *Michel v. Orange Cty., New York*, No. 21-CV-09406, 2022 WL 103581, at *3 (S.D.N.Y. Jan. 11, 2022). Moreover, "leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Having been given the opportunity to cure the original complaint's various deficiencies, and having failed to do so, the Court dismisses the claims alleged in the Amended Complaint with prejudice as any amendment would be futile.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to terminate the motions pending at Docs. 48 and 50 and to close this case.

Dated: White Plains, New York
      May 4, 2022

                     SO ORDERED:

                     _____
                     Philip M. Halpern
                     United States District Judge